ORIGINAL

DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR 1 2013

CLERK, U.S. DISTRICT COURT
By_____
        Deputy

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| GREGORY ANDERS, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-127-A |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER | § | |
| OF SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation

of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Gregory Anders ("Anders") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying his claims for disability insurance benefits ("DIB")

under Title II and supplemental security income ("SSI") under Title XVI of the Social Security

Act ("SSA"). Anders applied for DIB and SSI on September 22, 2009, alleging that his

disability began on July 23, 2009. (Tr. 107–20.)

After his application for benefits was denied initially and on reconsideration, Anders

requested a hearing before an administrative law judge ("ALJ"). (Tr. 59–72, 76–82.) The ALJ

held a hearing on December 16, 2010, at which Anders represented himself *pro se*, and the ALJ

issued an unfavorable decision on March 2, 2011. (Tr. 13–22.) Sometime after the hearing,

Anders retained an attorney, who submitted additional evidence to the Appeals Council on his behalf. (Tr. 193–99.) The Appeals Council considered this additional evidence but denied Anders' request for review on February 9, 2012, leaving the ALJ's decision as the final decision of the Commissioner in his case. (Tr. 1–5.) Anders subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (2012) (disability); 20 C.F.R. Pt. 416 (2012) (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and the SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The SSA defines a "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in "any substantial gainful activity." 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled, and thus entitled to benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(b), 416.920(b). "Substantial gainful activity" is defined as work activity "that involves doing significant physical or mental activities . . . for pay or profit." *Id.* §§ 404.1572, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(c), 461.920(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v.*

*Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment contained in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(f), 416.920(f). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(g), 416.920(g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999).

Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant can still do notwithstanding his physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant's RFC is used at both the fourth and fifth steps of the sequential analysis. *Id.* §§ 404.1520(a)(4), 416.920(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* §§ 404.1520(e), 416.920(e). At steps one through four, the burden of proof rests upon the claimant to show that he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*,

837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

Anders presents the following issues:

1. Whether Anders' waiver of representation was valid; and

2. Whether the ALJ erred by failing to apply the special technique to Anders' mental impairments and failing to apply the correct severity standard to all of Anders' physical and mental impairments.

(Pl.'s Br. 1.)

### IV. ALJ DECISION

In his March 2, 2011 decision, the ALJ concluded that Anders was not disabled within the meaning of the SSA. (Tr. 22.) In making his determination, the ALJ proceeded to follow the five-step sequential evaluation process. At the first step, the ALJ found that Anders had not engaged in any substantial gainful activity since July 23, 2009, the alleged onset date. (Tr. 18.) At the second step, the ALJ found that Anders suffered from "degenerative disc disease of the cervical spine and degenerative joint disease of the left shoulder with tear/impingement of the AC joint" and that these conditions were severe impairments. (Tr. 18.) At the third step, the

ALJ found that Anders' severe impairments did not meet or equal in severity to any impairment contained in the Listing. (Tr. 15.)

The ALJ then assessed Anders' RFC as follows:

[Anders] has the residual functional capacity to lift/carry 20 pounds occasionally or 10 pounds frequently. In an 8-hour workday, he can stand and/or walk for 6 hours or sit for 6 hours. Postural activities such as stooping, kneeling, crouching, and crawling are occasional. [Anders] can do no climbing of ladders, ropes, or scaffolds. There can be no overhead reaching with the left arm[,] but there can be occasional overhead reaching with the right arm. He is able to perform simple and repetitive job tasks.

(Tr. 19.) Next, at the fourth step, the ALJ found that Anders was unable to perform any of his past relevant work as a maintenance mechanic, warehouse worker, printer, bouncer, and construction laborer. (Tr. 21.) Finally, at the fifth step, the ALJ opined that, based on Anders' RFC and on his age, education, and work experience, Anders had acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. (Tr. 21.) Thus, the ALJ concluded that Anders had not been under a disability from the alleged onset date, July 23, 2009, through the date of the decision. (Tr. 22.)

## V. DISCUSSION

### A. Was Anders' Waiver of Representation Invalid?

In his first issue, Anders argues that his waiver of representation at the hearing before the ALJ was invalid because the ALJ failed to properly inform him of his right to representation, the benefits of representation, and the cap placed on fees for representation. (Pl.'s Br. 10–19; Reply 1–3.) Of course, there is no constitutional right to counsel at a social security hearing. *See Brandyburg v. Sullivan*, 959 F.2d 555, 562 (5th Cir. 1992). However, a claimant has a statutory right to counsel at a social security hearing. *See* 42 U.S.C. § 406; 20 C.F.R. §§ 404.1705, 416.1505; *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003). The claimant may waive this

right if given sufficient information to decide intelligently whether to retain counsel or proceed *pro se*. *Norden v. Barnhart*, 77 F. App'x 221, 223 (5th Cir. 2003) (citing *Clark v. Schweiker*, 652 F.2d 399, 403–04 (5th Cir. Unit B July 1981)). "Sufficient information" includes explanations of how an attorney can assist the claimant in the hearing, the possibility of free counsel or a contingency agreement, and the limitation on attorney's fees to twenty-five percent of past due benefits awarded. *Clark*, 652 F.2d at 403.

Even if a claimant does not validly waive the right to counsel, the claimant must still show that he "was prejudiced due to the absence of counsel at the hearing." *Castillo*, 325 F.3d at 552. Remand is appropriate "only when the record reveals evidentiary gaps that result in unfairness or clear prejudice." *Guerin v. Shalala*, No. 93-8530, 1994 WL 395077, at *2 (5th Cir. June 28, 1994); *see also Brock v. Chater*, 84 F.3d 726, 729 n.1 (5th Cir. 1996). To establish prejudice, the claimant must show that counsel "could have and would have adduced evidence that might have altered the result." *Brock*, 84 F.3d at 728.

### 1. Sufficient Information to Decide Whether to Retain Counsel

On December 15, 2009, in a letter notifying Anders of his disapproved claim for DIB benefits, the Commissioner informed Anders that he could "have a friend, lawyer or someone else" help him with his appeal. (Tr. 66.) The letter also informed Anders that there were "groups" that could help him find a lawyer or give him free legal services if he qualified and that his local Social Security office had a list of these groups that could help him with his appeal. (Tr. 66.) The letter stated, "There are also lawyers who do not charge unless you win your appeal." (Tr. 66.) It explained that if Anders hired a lawyer, the Social Security Administration (the "Administration") must approve any fee before the lawyer could collect it and that "up to 25 percent" of any past due benefits would be withheld to pay toward the fee. (Tr. 66.)

On August 10, 2010, the Administration's Office of Disability Adjudication and Review sent Anders an acknowledgement of his request for a hearing, which again informed him that he could "choose to be represented by a lawyer or other person." (Tr. 83.) The letter explained that a representative could help him "get evidence, prepare for the hearing, and present [his] case at the hearing." (Tr. 83.) It again informed Anders that some lawyers would charge a fee only if he received benefits and that some organizations might be able to represent him free of charge. (Tr. 84.)

This letter also attached a two-page publication by the Administration entitled, "Your Right To Representation." (Tr. 85–86.) This publication states, "You can have a representative, such as an attorney, help you when you do business with Social Security." (Tr. 85.) It lists several actions that the representative can take on the claimant's behalf, such as helping the claimant obtain medical records, accompanying the claimant to interviews and hearings, and preparing and questioning witnesses. (Tr. 85.) The publication further states,

> Some organizations can help you find an attorney or give you free legal services if you qualify. Some representatives do not charge unless you receive benefits. Your Social Security Office has a list of organizations that can help you find a representative.

(Tr. 85.) The publication also explains that the SSA will usually approve a fee agreement between a claimant and a representative as long as, *inter alia*, the agreed-upon fee "is no more than 25 percent of past-due benefits or $6,000, whichever is less." (Tr. 85–86.) Finally, the publication states that, "[i]f an attorney or non-attorney whom Social Security has found eligible for direct payment represents you, we usually withhold 25 percent (but never more) of your past-due benefits to pay toward the fee." (Tr. 86.)

This letter also attached a document entitled, "Important Notice," which listed several organizations that Anders could contact for a referral to a private attorney. (Tr. 87–89.) The

notice stated in conspicuous type, "Some private attorneys may be willing to take your case under a fee agreement whereby no fee will be charged unless your claim is allowed." (Tr. 87) (emphasis in original). The notice also listed organizations that Anders could contact if he believed that he might qualify for free legal representation. (Tr. 88.)

On October 5, 2010, the ALJ sent Anders a notice of hearing that again informed him that he could choose to have a person represent him at the hearing and that he or his representative could submit documents, present and question witnesses, state his case, and give written statements about the facts and the law. (Tr. 91, 93.) This hearing notice again attached the two-page publication, "Your Right To Representation." (Tr. 96–97.) Thereafter, at the beginning of the December 16, 2010 hearing, the following exchange took place between the ALJ and Anders:

> ALJ: Okay. And you are here without an attorney or a non-attorney representative. I need to make sure that you understand that you have that right to have one. Do you understand that?
> CLMT [Anders]: Yes.
> ALJ: Alright; and you wish to waive that right and to proceed without one?
> CLMT: Yes.
> ALJ: Alright. That's what we'll do.

(Tr. 25.)

Anders concedes that the August 10, 2010 and October 5, 2010 notices that he received "include the required information for a valid notification." (Pl.'s Br. 14.) He nevertheless complains that his waiver of counsel was invalid because, at the hearing, 1) the ALJ did not ask Anders' reason for waiving representation; 2) the ALJ did not orally explain how representation could assist Anders, the statutory cap on fees, the possibility of free or contingency-based representation, or the requirement of court approval for any fee charged; and 3) the ALJ did not offer to adjourn the hearing so that he could obtain representation if he so wished. (Pl.'s Br. 15.)

Anders cites no law in the Fifth Circuit or in this district explicitly requiring the detailed oral notice that Anders urges when the prehearing written notice adequately provides notification of the claimant's right to counsel.[1] According to precedent, "[a]n ALJ should provide prehearing written notification of a claimant's right to counsel, and also ascertain at the hearing whether the claimant had a 'meaningful opportunity to secure counsel and, if not, consider adjourning the hearing to provide that opportunity.'" *Ivanova v. Astrue*, No. 3:09-CV-2349-K, 2010 WL 2228511, at *8 (N.D. Tex. May 20, 2010) (quoting *Freeman-Park v. Barnhart*, 435 F. Supp. 2d 597, 601 (E.D. Tex. 2006)), *adopted in* 2010 WL 2228515 (N.D. Tex. June 2, 2010).

The two Northern District of Texas cases that Anders urges in support of his argument are factually distinguishable from this case. The first, *Ivanova v. Astrue*, involved a claimant who did not speak or understand English. *Id.* at *1. The court found that the ALJ should have used an interpreter to inquire about the claimant's understanding of her right to counsel at the hearing because the prehearing written notices of claimant's right to counsel were written only in English, not in the claimant's native tongue. *Id.* at *8. In the second, *Rayford v. Astrue*, No. 4:10-CV-0174-G, 2011 WL 3268405, at *4–6 (N.D. Tex. July 29, 2011), the record showed that the claimant had previously obtained an attorney but that the attorney was not present at the hearing. The court found that the claimant's waiver was invalid without the additional oral notifications because the ALJ had made only a cursory inquiry at the hearing into why claimant was without counsel, and the record did not indicate why the claimant's attorney had withdrawn from the case prior to the hearing. *Id.* at *5. The court stated that it could only speculate as to

---

[1] The Fifth Circuit has recognized that prehearing written notice may not always be adequate. *See Benson v. Schweiker*, 652 F.2d 406, 408 (5th Cir. 1981). However, the *Benson* notice was held inadequate because it did not inform the claimant of "the possibility of her having free counsel and of the limitations on the fee that counsel could charge as a part of the recovery if any was made." *Id.* That is not the case here.

whether the claimant understood that she still had the right to obtain the services of another attorney after her first attorney had withdrawn. *Id.*

In contrast, here, there is no indication of the existence of any circumstances suggesting that Anders did not understand his right to representation. Despite receiving adequate written notices before the hearing of his right to obtain counsel, Anders simply chose to represent himself at the hearing. The Fifth Circuit has upheld a claimant's waiver of the right to counsel when prehearing written notices adequately provided the claimant with sufficient information regarding her right to counsel and the ALJ merely "reminded" the claimant at the hearing of the notices informing her of her right to be represented by an attorney and confirmed that she nevertheless wanted to appear without counsel. *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003); *see also Shelton v. Astrue*, No. 3:07-CV-1347-P, 2008 WL 4809436, at *5 (N.D. Tex. Nov. 3, 2008) (concluding that the claimant validly waived her right to counsel, even though the ALJ did not orally notify her that she could retain an attorney through a contingency fee arrangement or that free legal services could be available, because she received this information in prehearing written notices and the ALJ discussed the issue of right to counsel at the hearing).[2]

_____

[2] *Cf. Shelton v. Astrue*, No. 4:11-CV-264-Y, 2012 WL 826295, at *4 (N.D. Tex. Jan. 30, 2012) (holding that claimant did not validly waive right to counsel, despite receiving prehearing written notice, because the record of the hearing "contain[ed] no evidence that the ALJ provided any oral notification whatsoever of [the claimant's] right to counsel"), *adopted in* 2012 WL 812391 (N.D. Tex. Mar. 12, 2012).

Anders also urges several cases from other districts in his reply, all of which include facts that raise the question of whether the claimant's waiver was invalid. (Reply 2–3.) Such facts, however, are not present in this case. *See, e.g., Denson ex rel. F.B. v. Astrue*, No. H-09-0110, 2009 WL 3765889, at *3 (S.D. Tex. Nov. 10, 2009) (holding claimant's implicit waiver invalid because the ALJ failed to provide any oral notification of claimant's right to counsel and failed to ask claimant at the hearing whether she wanted to proceed without counsel); *Freeman-Park v. Barnhart*, 435 F. Supp. 2d 597, 600 (E.D. Tex. 2006) (holding waiver invalid when ALJ granted claimant a continuance to retain an attorney, but when claimant subsequently appeared without an attorney, ALJ did not ask her why she was without counsel); *Earp v. Comm'r of Soc. Sec. Admin.*, 168 F. Supp. 2d 628, 634 (E.D. Tex. 2001) (holding that illiterate and possibly mentally retarded claimant did not properly waive her right to counsel); *Gullett v. Chater*, 973 F. Supp. 614, 621 (E.D. Tex. 1997) (holding claimant's waiver invalid when claimant did not receive any prehearing written notice of his right to counsel and the ALJ did not orally inform claimant of his rights at the hearing). Thus, the Court is unpersuaded that it should apply the rationale of these cases to the present case.

Similarly, here, Anders received prehearing written notices that adequately informed him of ways in which his attorney could assist him, the possibility of free counsel or a contingency arrangement, and the limitation on attorney's fees to twenty-five percent of past due benefits. These prehearing notices contained the "sufficient information" necessary to allow Anders to make an intelligent decision on the issue of retaining counsel. *See Norden*, 77 F. App'x at 223; *Clark*, 652 F.2d at 403. Furthermore, at the hearing, the ALJ confirmed that Anders understood his right to have an attorney or some other representative present with him but that he still wanted to proceed *pro se*. Accordingly, the Court concludes that the information provided by the prehearing written notices, along with the ALJ's oral reminder at the hearing of Anders' right to counsel, sufficiently informed Anders of his right to an attorney. Thus, Anders validly waived his right to counsel and decided to proceed *pro se*.

### 2. Alleged Prejudice Due to the Absence of an Attorney

Even if the Court assumed that Anders did not validly waive his right to counsel, remand still would not be required because Anders cannot show how the presence of an attorney at the hearing might have changed the ALJ's determination. Anders argues that he was prejudiced by the absence of an attorney because he suffered from several impairments that the ALJ did not determine to be severe and did not factor into the RFC determination: 1) frequent headaches, 2) carpal tunnel syndrome and upper-extremity limitations, 3) mental impairments, 4) chronic pain syndrome, and 5) hearing disruption. Anders contends that counsel could have obtained and emphasized evidence of these impairments and their effects on his ability to work. (Pl.'s Br. 15–16.) Anders did, in fact, retain an attorney after the hearing, and his attorney submitted new evidence to the Appeals Council that the Appeals Council considered. (Tr. 1–5.) This new evidence consisted of 1) a brief from Anders' attorney; 2) records from JPS Health Center–

Diamond Hill dated June 14, 2010, through June 23, 2011; 3) records from JPS Orthopedic and Sports Medicine, dated April 16, 2010, through June 22, 2010; 4) records from JPS Health Center–Viola M. Pitts/Como, dated February 17, 2011, through May 5, 2011; and 5) records from Division for Rehabilitation Services, dated July 14, 2010, through April 8, 2011. (Tr. 4–5.)

The regulations provide a claimant the opportunity to submit new and material evidence to the Appeals Council for consideration when deciding whether to grant a request for review of an ALJ's decision. 20 C.F.R §§ 404.970(b), 416.1470(b). For new evidence to be considered material, there must exist "the reasonable possibility that it would have changed the outcome of the [Commissioner's] determination." *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994). Additionally, to be considered material, the evidence must "relate to the time period for which benefits were denied." *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985). Evidence of a later-acquired disability or a subsequent deterioration of a non-disabling condition is not material. *Id.* Evidence submitted for the first time to the Appeals Council is considered part of the record upon which the Commissioner's final decision is based. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). A court considering that final decision should review the record as a whole, including the new evidence, to determine whether the Commissioner's findings are supported by substantial evidence and should remand only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported. *Higginbotham v. Barnhart*, 163 F. App'x 279, 281–82 (5th Cir. 2006).

### a. Evidence of Mental Impairments

First, Anders claims that the new medical records from JPS Health Center–Viola M. Pitts/Como and the Division for Rehabilitation Services show that 1) Anders was receiving treatment for his mental impairments at the time of the hearing, 2) these mental impairments

were severe, and 3) this evidence might have affected the ALJ's RFC assessment and the ALJ's analysis at step five. (Pl.'s Br. 16.) The evidence from JPS relating to the relevant timeframe shows that, consistent with Anders' testimony at the hearing, Anders was seeing a psychiatrist for mental health treatment. (Tr. 332–41.) On October 28, 2010, Anders was diagnosed with 1) major depressive disorder, recurrent, moderate, and 2) polysubstance dependence, continuous (alcohol, marijuana, and cocaine). (Tr. 337–38.) On February 17, 2011, Anders reported feeling anxious. (Tr. 333–35.) He told medical staff that he was looking for a job. (Tr. 334.) His depression was observed to be mild, and his anxiety was moderate. (Tr. 334.) His concentration, insight, and judgment were fair. (Tr. 334.) Otherwise, the mental exam's objective findings showed that he was cooperative, alert, and oriented, with unimpaired memory and an appropriate mood and affect. (Tr. 334.) He had no hallucinations or delusions and posed no risk of suicide or aggression. (Tr. 334.) He was prescribed a mood stabilizer.[3] (Tr. 335.)

Next, Anders points to evidence of counseling he received from Paul L. Warren, Psy.D. ("Dr. Warren") of the Division for Rehabilitation Services ("DRS").[4] (Tr. 343–60.) A November 17, 2010 intake note records that Anders said he was interested in pursuing training to work as a land surveyor but that he thought that his physical work restrictions were a "major obstacle to his finding employment." (Tr. 352.) Dr. Warren noted that Anders was "moderately dysphoric/irritable with appropriate affect; minimal insight; adequately motivated." (Tr. 352.)

---

[3] The new records document another visit to the JPS behavioral health clinic, on May 5, 2011, but the record from this visit is not material because there is no indication that it relates to the relevant time period. *See Johnson*, 767 F.2d at 183.

[4] Anders was receiving assistance from the Department of Assistive and Rehabilitative Services for "vocational planning and disposition" after he suffered a work-related injury to his shoulder in April 2008. (Tr. 352–53.) DRS, a division of the Department of Assistive and Rehabilitative Services, offers counseling through a vocational rehabilitation program to help persons with health-related impairments "prepare for, find and keep employment." *Services for Persons with Physical and Mental Disabilities*, Texas Dep't of Assistive and Rehabilitative Servs., http://www.dars.state.tx.us/drs/index.shtml (last visited February 25, 2013).

Dr. Warren's impression was that Anders suffered from dysthymic disorder/anxiety disorder not otherwise specified. (Tr. 352.)

Dr. Warren observed in progress notes from December 2010 to March 2011 that Anders was stubborn and had considerable authority issues. He was mild to moderately dysphoric and irritable, with a negative affect, pessimistic outlook, and limited insight. (Tr. 345–51.) Dr. Warren observed that Anders' depression worsened when he did not take his antidepressant medication but that when Anders was compliant with medication, he was more energetic, had more initiative, and was more motivated and hopeful. (Tr. 346.) Early in counseling, Anders stated that he wouldn't "take a job that is menial or repetitive" because "that would be beneath [him]." (Tr. 350.) Dr. Warren noted on January 4, 2011, that Anders' "narcissistic personality greatly limits any possible progress." (Tr. 349.) However, on January 28, 2011, Dr. Warren encouraged Anders to apply for a position as a facility maintenance man, a job lead that Anders had been reluctant to follow because it was several miles from his home. (Tr. 348.) Dr. Warren noted that Anders appeared to be more cooperative and motivated, and Dr. Warren stated that he thought Anders "may be well suited for" the job. (Tr. 348.) Anders reported throughout the counseling sessions that he continued to attend job fairs and look for work. (Tr. 345–52.)

### b.  Evidence of Physical Impairments

### i.   Carpal Tunnel Syndrome

The ALJ stated in his decision that, although Anders testified that he had carpal tunnel syndrome, the medical records contained no treatment reports for this alleged impairment. (Tr. 18.) Anders argues that, had he been represented by an attorney at the hearing, the attorney would have obtained and highlighted records documenting diagnosis and treatment for bilateral carpal tunnel syndrome, which would have provided a basis for including manipulative

limitations in the ALJ's RFC finding and, thus, could have affected the ALJ's finding of no disability at step five. (Pl.'s Br. 16–17.)

In support, Anders refers to a medical record that was before the ALJ at the time of the hearing, a July 26, 2010 treatment record from JPS Health Center–Diamond Hill, which showed that he had complained to his doctor of wrist pain that worsened at night. (Tr. 262.) The treatment record noted that Tinel's sign was positive in the wrists bilaterally. (Tr. 263.) Consequently, Anders was diagnosed with bilateral carpal tunnel syndrome and was directed to undergo "electrodiagnostic studies to evaluate bilateral upper extremities for carpal tunnel syndrome versus cervical radiculopathy." (Tr. 263.)

Anders also points to the new evidence submitted to the Appeals Council from JPS Health Center–Diamond Hill and JPS Orthopedic and Sports Medicine. Specifically, an August 5, 2010 electrodiagnostic study report showed that there was evidence suggestive of right and left median nerve sensory neuropathy at the wrist, as seen in carpal tunnel syndrome. (Tr. 315.) On November 3, 2010, Anders complained to his doctor at JPS Orthopedic and Sports Medicine that he had "painful paresthesias in bilateral hands." (Tr. 309.) The doctor diagnosed him with bilateral carpal tunnel syndrome and provided him with bilateral wrist carpal tunnel splints for nighttime wear. (Tr. 309.) Finally, a February 7, 2011 treatment record reflects that Anders was using wrist splints to treat his carpal tunnel syndrome. (Tr. 289.) He was directed to continue wearing bilateral wrist splints and to return to the clinic in four months for follow-up. (Tr. 290.)

### ii. Chronic Pain Syndrome and Thoracic Spine Impairments

Anders also argues that an attorney present at the hearing could have directed the ALJ to evidence that Anders suffers from chronic pain syndrome and that this evidence, along with evidence of his thoracic spine impairments, could have validated the degree of pain that Anders

alleged. (Pl.'s Br. 18.) In support, Anders refers to treatment records before the ALJ dated February 1, 2010, and July 14, 2010, as well as a treatment record submitted to the Appeals Council dated February 7, 2011, all showing that Anders had been diagnosed with chronic pain syndrome. (Tr. 211, 252, 289–90.)

Anders also points to records from an April 16, 2010 orthopedic sports medicine consultation showing that he reported pain in the cervicothoracic junction on left and right rotation, as well as left lateral flexion. (Tr. 260–61.) Tenderness to palpitation was noted in the bilateral paraspinal regions of the thoracic spine, and over the spinous processes, down to T8-T10. (Tr. 261.) Right rotation was mildly limited, and left rotation was mild to moderately limited. (Tr. 260.) Right lateral flexion was grossly normal, but left lateral flexion range of motion was decreased. (Tr. 260-61.) Anders was diagnosed with neck and mid-back pain; however, the doctor ordered a repeat MRI of the cervical spine, but not of the thoracic spine. (Tr. 261.) An April 17, 2010 x-ray of the thoracic spine revealed minimal degenerative changes and no fracture or subluxation. (Tr. 255.) These thoracic spine records were all included in the evidence submitted to the ALJ before the ALJ issued his written decision.

In the new records submitted to the Appeals Council, an October 1, 2010 MRI of the thoracic spine showed minimal degenerative changes. (Tr. 303.) There was a small posterior disc bulge present at T5-T6, but there was no evidence of stenosis or impingement. (Tr. 303.) On November 3, 2010, Anders was diagnosed with thoracalgia and degenerative disc disease at T5-T6. (Tr. 309.) He had severe tenderness to palpitation in the midline of the thoracic spine around T5-T6 level. (Tr. 309.) He was scheduled for a thoracic epidural steroid injection to the T5-T6 level. (Tr. 309.)

### c. Analysis of Anders' Claim of Prejudice

All of this evidence from the relevant time period that Anders uses as support for his arguments for remand was either already before the ALJ or submitted to the Appeals Council before it made its decision to deny Anders' request for review. In the notice of denial, the Appeals Council informed Anders that it had considered the additional evidence that he had submitted but had concluded that this additional information did not provide a basis for changing the ALJ's decision.[5] (Tr. 1–2.) Remand based on new and material evidence is required only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported. *Higginbotham*, 163 F. App'x at 281–82. A review of the entire record, including the new evidence submitted to the Appeals Council, leads the Court to find that the new evidence is not so inconsistent with the ALJ's findings that it undermines the ultimate disability determination. Therefore, because Anders does not show that counsel could have and would have presented evidence that might have altered the result, he also cannot show that he was prejudiced by the absence of counsel at the hearing. *See id.*; *Brock*, 84 F.3d at 729 n.1.

Although Anders was diagnosed with depression, his treatment records during the relevant time period show that his depressive symptoms were mild and his anxiety was moderate. Anders' DRS vocational counselor observed that Anders was dysphoric, irritable, negative, and pessimistic. However, the counselor also observed that his mood and attitude improved when he was compliant with antidepressant medication. An impairment that can be controlled or remedied by medication or therapy cannot serve as a basis for a finding of disability. *See Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988). And notwithstanding

---

[5] The Appeals Council will review a claimant's case if 1) there appears to be an abuse of discretion by the administrative law judge; 2) there is an error of law; 3) the action, findings, or conclusions of the administrative law judge are not supported by substantial evidence; 4) there is a broad policy or procedural issue that may affect the general public interest; or 5) new and material evidence is submitted and the decision is contrary to the weight of the evidence currently of record. 20 C.F.R. §§ 404.970, 416.1470.

Anders' symptoms, the counselor encouraged him to continue to apply for employment and stated that Anders "may be well suited for" a facility maintenance job. Accordingly, the Court finds that the new evidence does not show that Anders' depression affected his ability to work such that the ALJ's decision is rendered unsupported by substantial evidence. *See Higginbotham*, 163 F. App'x at 281–82.

Next, the Court recognizes that the ALJ was incorrect in stating that there was no evidence of Anders' carpal tunnel syndrome because a medical record before the ALJ showed that Anders had been diagnosed with carpal tunnel syndrome on July 26, 2010. Evidence submitted to the Appeals Council showed that electrodiagnostic studies confirmed this diagnosis and that Anders was using bilateral wrist splints to treat this impairment. However, a mere diagnosis of an impairment does not establish a disabling impairment or even a significant impact on that person's functional capacity. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) (noting that the mere presence of some impairment is not disabling per se). There must be some evidence of an impairment's effect on the individual's ability to work. These new medical records do not contain any indication of any effect, other than pain, on Anders' abilities. Anders points to no medical documentation in the record of any limitations, manipulative or otherwise, resulting from his carpal tunnel syndrome.

The ALJ considered Anders' complaints of pain in his hands, including his claim that holding a steering wheel numbs his hands. But the ALJ also observed that Anders was able to drive his children to and from school every day and concluded that it was "unlikely that he would remain committed to such a daily routine if his discomfort were as much as he described." (Tr. 21.) It is within the ALJ's discretion to discredit complaints of pain based on the claimant's testimony of his daily activities in combination with the medical records. *See Griego v. Sullivan*,

940 F.2d 942, 945 (5th Cir. 1991); *see also* 20 C.F.R. §§ 404.1529, 416.929 (explaining how the Administration evaluates symptoms, including pain). Accordingly, the Court finds that the evidence relating to diagnoses of Anders' carpal tunnel syndrome does not dilute the record to such an extent that the ALJ's decision is insufficiently supported. *See Higginbotham*, 163 F. App'x at 281–82.

Similarly, the Court is unpersuaded that evidence of Anders' chronic pain syndrome diagnosis and thoracic impairments necessarily undermines the ALJ's decision. Evidence before the ALJ showed that Anders was diagnosed with chronic pain syndrome in 2010. He also was diagnosed in 2010 with thoracalgia and degenerative disc disease at T5-T6. However, nothing in these records—or in the new evidence submitted to the Appeals Council—indicates the existence of any limitations more severe than those found by the ALJ and incorporated into the RFC finding. The evidence indicates that Anders was diagnosed with neck and mid-back pain, with mild to moderate limitation of rotation and decreased left lateral flexion range of motion. But the ALJ was entitled, as he did, to discount Anders' subjective complaints of the extent to which he was limited by pain and to make the ALJ's finding relative to pain based on the overall picture projected by the entire record.

The ALJ took into account Anders' subjective statements concerning the intensity, persistence, and limiting effects of his pain and found that Anders' impairments could reasonably be expected to cause his symptoms, but not to the extent that Anders alleged. The ALJ's stated reasons for this conclusion were that 1) Anders was able to drive his children to and from school on a daily basis; 2) the record contained no statement from any source that Anders was disabled; 3) Anders' doctors have indicated that he is capable of light work; and 4) Anders appeared to be physically fit at the hearing. (Tr. 21.) While Anders highlights medical records that pertain to

his chronic pain syndrome and thoracic impairments, these records largely consist of diagnoses and Anders' reports of pain but not any additional limitations related to these conditions. Anders claims that these records "could validate the degree of pain [that] Anders alleged," but because they do not refute the ALJ's stated reasons for discounting Anders' allegations regarding the extent of his symptoms, the Court is not convinced that this evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported. *See Higginbotham*, 163 F. App'x at 281–82; *see also Michell v. Astrue*, No. 4:10-CV-339-Y, 2011 WL 1630895, at *3 (N.D. Tex. Apr. 29, 2011) (holding that new evidence did not require remand because it did not refute the reasons why the ALJ found the claimant's complaints about disabling pain inconsistent with the record as a whole).

Anders also argues that the ALJ failed in his duty to develop the record because many records, particularly relating to Anders' carpal tunnel syndrome and his mental impairments, were available at the time of the hearing, but the ALJ did not obtain them before rendering his decision. (Pl.'s Br. 17.) The ALJ has a duty to develop the facts relative to a claim for benefits fully and fairly. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). When the ALJ fails in this duty, he does not have before him sufficient facts on which to make an informed decision, and his decision is not supported by substantial evidence. *Brock*, 84 F.3d at 728; *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). "Nonetheless, reversal is appropriate only if the claimant shows that he was prejudiced as a result of the insufficient record." *Hudspeth v. Astrue*, No. 4:09-CV-156-Y, 2010 WL 3033891, at *12 (N.D. Tex. July 2, 2010); *see Kane*, 731 F.2d at 1220. Even assuming that the ALJ had a duty to further develop the record in this case, any such need for sufficient information was satisfied when Anders submitted his additional medical records to the Appeals Council. Because the

additional records contain all of the information that Anders claims should have been considered by the ALJ prior to the Appeals Council's denial of his request for review, the issue actually is whether the Appeals Council properly considered such evidence. As explained above, the new evidence does not dilute the record to such an extent that the ALJ's decision is insufficiently supported. Consequently, the Court finds that the Appeals Court properly considered the new evidence submitted to the Appeals Council, and remand is not required due to the ALJ's alleged failure to develop the record.[6]

Finally, Anders argues that counsel would have cross-examined and presented hypotheticals to the vocational expert ("VE") regarding the effect of Anders' alleged limitations on his ability to work. (Pl.'s Br. 19.) However, Anders does not explain how additional hypotheticals would have adduced any additional evidence that might have changed the result— particularly when there was substantial evidence to support the RFC determination upon which the ALJ based his questions to the VE. *See Brock*, 84 F.3d at 728. To obtain reversal based on the absence of counsel, Anders is required to show that the lack of counsel at the hearing caused him prejudice. However, the Appeals Council had before it all of the evidence that Anders claims the ALJ should have reviewed, and there is no reason to think that the Appeals Council was not being truthful when it said that it had considered the additional evidence that Anders had submitted. *Cf. Allen v. Astrue*, No. 4:11-CV-157-A, 2012 WL 2819439, at *6 (N.D. Tex. July 9, 2012) (stating that there was no reason to think that the ALJ was not being truthful when he said

---

[6] Anders also contends that he was prejudiced by his lack of representation because counsel would have explained to him that his case would be much stronger if he obtained an up-to-date physical examination by one of his treating doctors or specialists because this "could have changed the outcome of his case by showing more restrictive limitations than found by the ALJ." (Pl.'s Br. 17–18.) However, the record does contain up-to-date treatment records from Anders' treating doctors, none of which indicate any further limitations beyond those already included in the ALJ's RFC finding. To establish prejudice, the claimant must show that counsel "could have and would have adduced evidence that might have altered the result." *Brock*, 84 F.3d at 728. Anders has not shown that additional exams would have resulted in evidence of additional limitations that might have altered the ALJ's findings.

that his decision was based on his review of the case record). Further, Anders has not shown that counsel "could have and would have adduced evidence that might have altered the result." *Brock*, 84 F.3d at 728. Accordingly, Anders has shown no unfair "evidentiary gaps" in the record. *Guerin*, 1994 WL 395077, at *2. Because Anders validly waived his right to counsel, and because he cannot show that he was prejudiced by not being represented by counsel at the hearing, remand on this ground is not required. *See id.*; *Brock*, 84 F.3d at 728.

### B. Did the ALJ Improperly Analyze the Severity of Anders' Mental Impairments?

Anders argues in his second issue that the ALJ erred by failing to perform the psychiatric review technique with regard to his claimed mental impairments.[7] (Pl.'s Br. 19.) Under this technique, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If such an impairment exists, the ALJ next evaluates the degree of functional loss resulting from the claimant's mental impairments in four functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The regulations require the ALJ's written decision to incorporate the pertinent findings and conclusions based on the technique. 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4). In his decision, the ALJ did not evaluate the four functional areas because he found that the record did not establish that Anders had a medically determinable mental impairment. (Tr. 18–19.)

A medically determinable impairment is one that is "demonstrated by 'medically acceptable clinical and laboratory diagnostic techniques.'" *Greenspan v. Shalala*, 38 F.3d 232,

---

[7] The "technique" is a set of mandatory steps that the regulations require an ALJ to follow when evaluating the severity of mental impairments in claimants. *See* 20 C.F.R. §§ 404.1520a(a), 416.920a(a).

239 (5th Cir. 1994) (quoting 42 U.S.C. § 423(d)(3)). At the hearing, Anders testified that he was seeing a psychologist and a psychiatrist for depression and that he was taking medication, including Seroquel and citalopram, to treat his depression. (Tr. 40.) As the ALJ noted in his decision, however, Anders provided no medical records substantiating his claims of depression. (Tr. 18.) The ALJ contacted MHMR in an attempt to obtain treatment records but was informed that Anders had not been treated at MHMR. (Tr. 19.) The ALJ also referred to a July 21, 2010 psychological evaluation performed by Edward G. Bleker, Ph.D. pursuant to a referral by the Texas Department of Assistive and Rehabilitative Services, which reported that Anders had specifically stated that he was not seeing any mental health professionals. (Tr. 18, 267.) Without any medical records before the ALJ containing any diagnosis of a mental impairment, even after the ALJ attempted to obtain such records, the Court questions how the ALJ could be expected to analyze Anders' claimed mental impairments.

Whether the Appeals Council should have remanded the decision to the ALJ to perform the technique in light of the new evidence submitted to the Appeals Council is a different matter, however. Again, new evidence requires remand only if it dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported. *Higginbotham*, 163 F. App'x at 281–82. And although the regulations require the ALJ's written decision to incorporate findings and conclusions based on the technique, violation of a regulation requires remand only when a reviewing court concludes that the error is not harmless. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

As stated above, the evidence before the Appeals Council of Anders' claimed mental impairments, though more complete than the evidence before the ALJ, does not show that Anders' depression affected his ability to work such that the ALJ's decision is rendered

unsupported by substantial evidence. The medical evidence showed that Anders' mood and attitude improved with medication and that his therapist encouraged him to continue to apply for work, even stating that Anders "may be well suited for" a facility maintenance job. Thus, even if the Appeals Council's failure to require the ALJ to perform the technique in light of the new evidence constituted error, this error is harmless and does not require remand. *See Frank*, 326 F.3d at 622; *Morris*, 864 F.2d at 335; *Livingston v. Astrue*, No. 6:10-CV-014-BG, 2011 WL 4359942, at *8–9 (N.D. Tex. Aug. 16, 2011) (concluding that the ALJ's failure to perform the technique was harmless and did not require remand because substantial evidence supported the ALJ's decision), *adopted in* 2011 WL 4374970 (N.D. Tex. Sept. 19, 2011).

Anders also argues that the ALJ committed legal error by failing to cite the severity standard of *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1995). (Pl.'s Br. 21.) To evaluate whether a claimant's medical condition qualifies as a "severe impairment" at step two of the analysis, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); *cf. id.* §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").

The Fifth Circuit, however, has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the SSA. *See Stone*, 752 F.2d at 1104–05. Instead, the Fifth Circuit has established the following standard for determining whether a claimant's impairment is severe: An impairment is not severe only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."

24

*Id.* at 1101 (emphasis added). The ALJ did not recite the *Stone* standard or cite to *Stone* in his discussion of the severity of Anders' impairments. The Fifth Circuit stated in *Stone* that it would assume that the ALJ had applied an incorrect standard to the severity requirement unless the correct standard was either set forth by reference to *Stone* or expressly stated in the decision. 752 F.2d at 1106. The Fifth Circuit stated that, "[u]nless the correct standard is used, the claim must be remanded to the Secretary for reconsideration." *Id.*

On the other hand, procedural perfection is not required unless it affects the substantial rights of a party. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). The Fifth Circuit recently published an opinion clarifying that even if the ALJ errs in failing to follow the procedures set out in *Stone*, such error does not require remand unless the claimant is harmed by the error. *Taylor v. Astrue*, No. 11-11085, 2012 WL 6965181, at *2 (5th Cir. June 28, 2012) (per curiam).[8] Under *Taylor*, therefore, a *Stone* error no longer requires automatic remand but instead is subject to a harmless-error analysis. *See id.* Based on the evidence in the record as discussed above, the Court concludes that the ALJ's failure to cite to *Stone* did not affect Anders' substantial rights. Anders was required to show that he was so functionally impaired by his impairments that he was precluded from engaging in substantial gainful activity. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). He fails to do so, and any error by the ALJ in not following the procedures set out in *Stone* is harmless.[9] *See Taylor*, 2012 WL 6965181, at *2.

---

[8] The Fifth Circuit apparently published the *Taylor* opinion on December 19, 2012, in response to a motion to publish filed by the Commissioner. *See* note 9, *infra*.

[9] In the past, the undersigned has concluded that because *Stone* mandates that a claim must be remanded to the Commissioner for reconsideration if there is no indication that the ALJ applied the correct severity standard, a *Stone* error is a legal error that is not subject to harmless-error analysis. *See, e.g., Anderson v. Astrue*, No. 4:11-CV-317-Y, 2012 WL 4478964, at *8 n.5 (N.D. Tex. Aug. 7, 2012). Before *Taylor*, this was also the position taken by most of the judges in the Northern District of Texas. *See id.* (citing cases). The undersigned has reviewed the Commissioner's motion to publish the Fifth Circuit's opinion in *Taylor*, in which the Commissioner contended that the Fifth Circuit had previously issued conflicting guidance on whether a *Stone* error is subject to a harmless-error analysis. *Compare, e.g., Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (holding that *Stone* error required remand) *with LeBlanc v. Chater*, 83 F.3d 419, 1996 WL 197501, at *2 (5th Cir. 1996) (unpublished table decision) (stating

25

Additionally, the district judge to which this case is assigned has held that "in those cases where the administrative law judge found the existence of a severe condition at step two and went past step two to reach a decision at a later step that benefits should be denied," any error in failing to use the *Stone* severity standard at step two of the analysis is harmless. *Jones v. Astrue*, 851 F. Supp. 2d 1010, 1016 (N.D. Tex. 2012). Here, the ALJ found at step two that Anders' degenerative disc disease of the cervical spine and degenerative joint disease of the left shoulder with tear/impingement of the AC joint were severe impairments. The ALJ proceeded past step two and continued his analysis, ultimately determining at step five that Anders could perform jobs existing in significant numbers in the national economy and, thus, benefits should be denied. Accordingly, the ALJ's failure to cite to *Stone* at step two was, at most, harmless error under *Jones* as well. *See id.* Remand is not required on Anders' second issue.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only

---

that remanding a case for *Stone* error would be a waste of judicial resources when the evidence established that the outcome would remain the same). The Commissioner also posited that this conflicting guidance has led to differing results. *Compare, e.g., Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805 (N.D. Tex. 2009) (holding that misapplication of *Stone* standard is a legal error requiring remand) *with Jones v. Astrue*, 851 F. Supp. 2d 1010, 1015–18 (N.D. Tex. 2012) (holding that *Stone* error is harmless if ALJ proceeds past step two of the sequential evaluation process). The Commissioner's motion to publish, filed on September 26, 2012, urges the Fifth Circuit to designate its *Taylor* opinion for publication because such opinion provides conclusive guidance on whether a *Stone* error is subject to a harmless-error analysis. On December 19, 2012, the Fifth Circuit granted the Commissioner's motion to publish. Accordingly, based on the guidance set forth in *Taylor*, the undersigned will now engage in a harmless-error analysis when analyzing a failure by the ALJ to cite to the proper legal standard of severity at step two.

make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until March 15, 2013, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED March 1, 2013.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE